UNITED STATES DISTRICT COURT

Northern District of California

LADONNA WILLIAMS, *et al.*

            Plaintiffs,

  v.

UNITED STATES TENNIS ASSOCIATION, *et al.*

            Defendants.

No. C 08-04698 MEJ

**ORDER RE DEFENDANTS' MOTIONS TO DISMISS**
[Dkt. ##14, 19, 50]

## I. INTRODUCTION

Pending before the Court are: (1) Defendant Harbor Bay Isle Associates, Inc.'s ("Harbor Bay") "Motion to Dismiss Plaintiffs' Unverified Complaint Pursuant to F.R.C.P. Rule 12(b)(6)" (Dkt. #14); United States Tennis Association Incorporated's ("USTA") "Motions to Dismiss the Complaint or, Alternatively; to Strike Certain Allegations" (Dkt. #19); and United States Tennis Association Northern California Inc.'s ("USTA Nor Cal"), "Motions to Dismiss the Complaint, or Alternatively, to Strike Certain Allegations" (Dkt. #50). Plaintiffs Ladonna Williams and P.W.[1] have not filed an opposition. On July 2, 2009, the Court held a hearing on the pending Motions. After considering the parties' briefs, the pleadings to date, and the parties' oral argument, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motions to Dismiss as set forth below.

---

[1] Plaintiff P.W. is a minor. Pursuant to Civil Local Rule 3-17, "If the involvement of a minor child must be mentioned in a pleading or other paper filed in the public file, only the initials of that child should be used." The Court will refer to Plaintiff accordingly.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs initiated this lawsuit on October 10, 2008, by filing a Complaint against seven named defendants.  (Dkt. #1.)  Two weeks later, Plaintiffs filed their "Corrected" Complaint (herein "First Amended Complaint.")  (Dkt. #3.)  Plaintiffs subsequently dismissed four of the defendants, and proceeded with the lawsuit against Harbor Bay, USTA, and USTA Nor Cal.  The factual allegations set forth in Plaintiffs' First Amended Complaint, taken as true and construed in the light most favorable to Plaintiffs, are as follows.

Plaintiff Ladonna Williams is the mother of Plaintiff P.W..  (FAC ¶5.)  By Plaintiffs' description, P.W. is a "local teen tennis prodigy who is Black." (*Id.* ¶17.)  The crux of this lawsuit concerns incidents that occurred on October 20 and 21, 2007 during a tennis tournament organized by Defendants USTA and USTA Nor Cal and held at Harbor Bay Tennis Club.[2]  During the tournament, P.W. and former-defendant K.D., competed against each other in their first-round match.[3]  According to Plaintiffs, during the match on October 20, 2007, K.D. "became very aggressive toward[] [P.W.]," and called her derogatory names (*Id.* ¶27.)  At some point, K.D. also threw an ice pack at P.W., hitting her in the face.[4]  (*Id* ¶¶8, 28.)  The following day, Plaintiffs allege that while they were at Harbor Bay Tennis Club, K.D. and her mother, former-defendant Patrice

---

[2]USTA is the national governing body for competitive tennis in the United States, and is the largest tennis organization in the world.  (*Id.* ¶6.)  NorCal is the California affiliated body of USTA and is jointly responsible for the organization of competitive tennis in the northern region of California.  (*Id.* ¶7.)  Harbor Bay Isle Associates is the owner of the premises where the tournament that P.W. competed in was held on October 20 and 21, 2007.  (*Id.* ¶8.)

[3]According to Plaintiffs' allegations, K.D. is a minor.  To the extent the Plaintiffs allege a discriminatory practice of making African-American tennis players compete against each others, Plaintiffs allege that K.D. "appears to be [B]lack." (*Id.* ¶27.)

[4]Plaintiffs' allegations concerning the actual date K.D. made the derrogatory statement and threw the ice pack at P.W. are unclear.  Particularly, Plaintiffs allege that K.D. threw the bag of ice on October 21, 2007 (*Id.* ¶28), and "[t]hese acts of assault and battery continued to the next day - on October 21, 2007" (*Id.* ¶29), when Plaintiffs' run-in with the Davises occurred.  Although not critical for purposes of this Motion, the Court will assume that K.D.'s verbal statement and ice-throwing occurred on October 20, 2007.

Davis, assaulted and threatened Plaintiffs.[5] (*Id.* ¶¶31-33.) Though Plaintiffs aver that the Davises instigated the altercation, Plaintiffs charge that the Davises "used the color of authority," namely, the fact that K.D.'s father/Patrice Davis's husband was an officer with the Santa Clara County Sheriff's Office, to convince the police officer responding to the call to cite and arrest P.W. for the altercation. (*Id.*)

With these facts as a starting point, Plaintiffs set forth a series of charges against the three remaining Defendants. Plaintiffs allege that USTA and USTA Nor Cal have discriminated against Plaintiffs specifically, and have employed discriminatory practices against African-American tennis players in general. In particular, Plaintiffs allege that USTA and USTA Nor Cal utilize a discriminatory draw system, whereby African-American tennis players are pitted against each other in early rounds in order to eliminate each other, are forced to play the highest seeded player in the draw, or are all placed on the same side of the draw, resulting in their early elimination. (*Id.* ¶22.) It is this discriminatory draw practice that, Plaintiffs assert, put P.W. against K.D. in the first round of the October 2007 tournament. (*Id.* ¶¶24, 26.) Stemming from Plaintiffs' incidents with the Davises during the tournament, Plaintiffs charge that the Harbor Bay, USTA, and USTA Nor Cal employees and officials who were present when Plaintiffs were accosted by the Davises did not assist or protect Plaintiffs. (*Id.* ¶30.) More generally, Plaintiffs allege that the Defendants failed to provide adequate security, security personnel, and monitoring to prevent altercations between players. (*Id.* ¶30.)

Plaintiffs allege that, after they reported the incidents with the Davises to USTA, USTA Nor Cal, and Harbor Bay, these Defendants failed to take any action and, instead, retaliated against Plaintiffs. (*Id.* ¶¶38, 47.) In particular, Plaintiffs charge that USTA and USTA Nor Cal circulated letters that defamed P.W. and her family, and USTA Nor Cal's president caused USTA Nor Cal staff

---

[5]Plaintiffs allege that Patrice Davis blocked Plaintiffs' path and began confronting Plaintiff Ladonna Williams about the tennis match the previous day, while she and P.W. were attempting to leave Harbor Bay Tennis Club. (FAC ¶53.) Patrice Davis then called Alameda Police and falsely claimed that P.W. slapped K.D. and used her husband's status as a officer of the Santa Clara Sheriff's Department, along with statements from K.D. and her friends that were also present, to cause the officer to arrest P.W. (*Id.*)

3

to send out "ghost letters" attacking P.W.'s conduct. (*Id.* ¶¶48, 51.)  Additionally, according to Plaintiffs, USTA and USTA Nor Cal suspended and defaulted P.W., and - at some point - deducted points from her, presumably during a subsequent tennis match. (*Id.* ¶48.)

Going beyond the incidents with the Davises, Plaintiffs allege that USTA and USTA Nor Cal created an unsafe environment at tournaments based on their officials' lack of protective actions for African-Americans in that, "[a]lthough most African-Americans , including [P.W.][,] are paid members (a mandated requirement), they are not provided the same level of safety[] and protection allotted to other non-Black members, resulting in false arrest of young Black junior players." (*Id.* ¶39.)

Unrelated to the incidents with the Davises, Plaintiffs also allege that USTA and USTA Nor Cal employ an "arbitrary use of default penalties when it comes to Blacks," (*Id.* ¶40; ¶44), and "usually ignore their own published mandated rules, regulations[,] and bylaws . . . when dealing with Black members." (*Id.* ¶46.)  Additionally, Plaintiffs allege that a"[h]ostile and unsafe environment exists at USTA Nor Cal committee meetings and public meetings where the police are called on Black USTA members who are exercising their rights to attend and address their unfair practices." (*Id.* ¶41.)  Plaintiffs further allege that USTA and USTA Nor Cal's process of awarding grants and scholarships to African-American players is unfair because grants and scholarships are denied to African-American tennis players more than to non-African-American tennis players. (*Id.* ¶¶42, 43.)

Based on the foregoing allegations, Plaintiffs assert the following claims: (1) violation of 42 U.S.C. § 1981; (2) violation of 42 U.S.C. § 1982; (3) violation of 42 U.S.C. § 1985(3); (4) intentional infliction of emotional distress; (5) false arrest and imprisonment; (6) negligence; (7) assault; (8) battery; (9) violation of the Article I, §§ 1, 7, and 13 of the California Constitution; (10) violation of California Civil Code § 52.1(B); (11) intentional infliction of emotional distress; (12) defamation; and (13) violation of Plaintiffs' Fourth and Fourteenth Amendment rights pursuant to 42

U.S.C. §1983.[6]

Each of the Defendants now moves to dismiss Plaintiffs' First Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[7]

### III.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may seek dismissal of a complaint for failure to state a claim upon which relief can be granted. Rule 8, which provides the standard for judging whether such a cognizable claim exists, requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, to survive a motion to dismiss, a complaint need not provide detailed factual allegations. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citation omitted).

A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," not just conceivable. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* Thus, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to

---

[6] Plaintiffs' claim pursuant to 42 U.S.C. § 1983 is asserted only against the City of Alameda and Walter Tibbert. As Plaintiffs have dismissed both defendants from this action, their § 1983 claim - as pled - is therefore moot. The Court will therefore dismiss this claim.

[7] Defendants USTA and USTA Nor Cal also move to strike various portions of Plaintiffs' First Amended Complaint. Because the Court finds Defendants' 12(b)(6) arguments dispositive, the Court will deny Defendants' motions to strike certain of the allegations without prejudice.

5

relief." *Iqbal*, 129 S.Ct. at 1950.

In reviewing a motion to dismiss, the court may also consider documents attached to the complaint. *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted). In addition, the court may consider a matter that is properly the subject of judicial notice, such as matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989). Further, before the Court dismisses a civil rights complaint by a *pro se* litigant, the Court must give notice of the deficiencies and leave to amend unless it is 'absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Broughton v. Cutter Labs*., 612 F.2d 458, 460 (9th Cir. 1980); *see Karim-Panahi v. Los Angeles Police Dep't*., 839 F.2d 621, 623-24 (9th Cir. 1988).

## IV. DISCUSSION

As indicated above, USTA, USTA Nor Cal, and Harbor Bay each move to dismiss Plaintiffs' First Amended Complaint against them in its entirety. Because the Court's subject matter jurisdiction over this matter is premised on Plaintiffs' federal claims, the Court will began its analysis with Counts One through Three of Plaintiffs' First Amended Complaint.

**A.    Count One - Violation of § 1981**

In Count One, Plaintiffs assert a claim for violation of 42 U.S.C. § 1981, which provides in relevant part:

> (a) Statement of equal rights
> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, li

6

> (b) "Make and enforce contracts" defined
> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

Because § 1981's "specific function" is to protect the equal right to "make and enforce contracts" without respect to race, "[a]ny claim brought under § 1981, therefore, must initially identify an impaired 'contractual relationship,' [] under which the plaintiff has rights." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 475, 476 (2006).

Here, Plaintiffs cannot point to any allegations in their First Amended Complaint indicating that any of the Defendant's conduct impaired a contractual relationship under which Plaintiffs' had rights. In paragraph 66 of the First Amended Complaint, Plaintiffs allude to "the making and enforcing of a [b]anking [c]ontract." Whether this allegation was an error or an oversight, since none of the three Defendants are banks or involved in financial matters with Plaintiffs, this reference to a banking contract is insufficient to support a § 1981 claim.

In paragraph 67 of the First Amended Complaint, Plaintiffs allege that Defendants violated § 1981 because: (1) P.W. "was prevented from fully participating in the tennis tournaments via discriminatory policies that favored non-African Americans"; (2) USTA and USTA NorCal's grant process is unfair; (3) "with regard to USTA and USTA Nor Cal, none of the three [c]ollege [s]cholarhsips (Arthur Ashe, Pancho Gonzales or Michael Chang) was awarded to Blacks from 2004-2007"; (4) "[u]nder USTA and USTA Nor Cal's policies, penalties unfairly rendered to Blacks compared to other ethinicities"; (5) "under USTA and USTA Nor Cal, there are wide cases of [d]iscrimination existing against Blacks in their employment, staff, communities"; (6) "USTA and USTA Nor Cal usually ignore their own published mandated rules, regulations and bylaws throughout this organization when dealing with Black members"; and (7) "USTA and USTA Nor Cal's practice [] caused the October 2007 [d]raw to put [P.W.] against [K.D.] (another Black teen) in 1st round as is customary practice against Blacks." The Court has considered each of these allegations and does not see how any of them either directly concern or implicate a contract or

contractual relationship under which Plaintiffs have rights.  There being no contract in play, Plaintiffs cannot meet their burden of "identify[ing] injuries flowing from a racially motivated breach of their [] contractual relationship[.]"  *Domino's Pizza*, 546 U.S. at 480.  Consequently, the Court finds that Plaintiffs have failed to plead a contractual relationship, which is essential to maintain a claim under § 1981.  The Court will therefore grant Defendants' motions to dismiss this claim.

During oral argument, the Court questioned Plaintiffs about whether there is any contract that they could point to in support of their claim.  Plaintiffs indicated that a "membership agreement" exists, which Plaintiffs argued Defendants have interfered with through their allegedly discriminatory conduct.  As indicated above, in the context of a motion to dismiss under Rule 12(b)(6), the Court must limit its examination to the face of Plaintiffs' First Amended Complaint.  Reviewing Plaintiffs' pleading, and in particular, the allegations in support of the § 1981 claim, Plaintiffs have not alleged any membership agreement as the contractual basis of their § 1981 claim.  If Plaintiffs wish to proceed with their claim on that basis, Plaintiffs must amend their § 1981 claim to reflect that allegation.  Accordingly, the Court will grant Plaintiffs leave to amend their § 1981 claim.

**B.      Count Two - Violation of § 1982**

In Count Two, Plaintiffs assert a claim against Defendants for violation of 42 U.S.C. § 1982.  Section 1982 provides: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."  "To effectuate the remedial purposes of the statute, the Court has broadly construed this language to protect not merely the enforceability of property interests acquired by [B]lack citizens but also their right to acquire and use property on an equal basis with white citizens."  *City of Memphis v. Greene*, 451 U.S. 100, 120 (1981).

In support of their § 1982 claim, Plaintiffs allege:

> 81.    The Defendants here had intent to discriminate against the individual Plaintiffs on account of their African-American race.  The Defendants excluded them from most benefits and entitlements and treated them like second class citizens for the reasons stated

8

> above. They were prevented from participating in tennis tournaments due to the defamatory written and oral notices given about [P]laintiffs, and the maligning of their character, treating them like dishonest, fraudulent, and incapable of participating in tennis tournaments efficiently on account of their African-American race.
>
> 82. The discrimination that occurred started in October 2007 and is continuing till the present, against the Plaintiffs.
>
> 83. The discrimination concerned one or more of the activities enumerated in the statute - 42 U.S.C. § 1981, in this instance, the making and enforcing of a [c]ontract.

Reviewing these allegations, Plaintiffs have not alleged what *property interest* Defendants impaired through their conduct. Nor does the Court's review of the entirety of Plaintiff's First Amended Complaint reveal any allegations of such a property interest. As a result, Plaintiffs' § 1982 claim - as currently pled - fails to state claim upon which this Court may grant relief. The Court will therefore grant Defendants' motions to dismiss Plaintiffs' § 1982 claim. However, to the extent that Plaintiffs believe they possess a personal property interest *that can legally support a claim under § 1982*, the Court will grant Plaintiffs leave to amend to re-assert such claim.

**C.     Count Three - Violation of § 1985(3)**

Defendants next urge the Court to dismiss Plaintiffs' Count Three for violation of 42 U.S.C. § 1985(3). A claim under § 1985(3) concerns conspiracies to deprive or interfere with civil rights. To state a claim under § 1985(3), a plaintiff must allege: "(1) a conspiracy; (2) to deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, and (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States." *Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-103 (1971)). With respect to the conspiracy element, the Ninth Circuit has held that a plaintiff asserting a claim under § 1985 "must allege facts to support the allegation that [the] defendants conspired together"; a "mere allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988) (affirming dismissal of § 1985(3) claim where complaint "contain[ed] legal conclusions but no

9

specification of any facts to support the claim of conspiracy"). However, there is no requirement that a plaintiff allege specific facts with respect to how the alleged conspiracy was formed; it is sufficient to allege facts from which the existence of a conspiracy may be inferred. *See Griffin*, 403 U.S. at 90-91; *Scott v. Ross*, 140 F.3d 1275, 1284 (9th Cir. 1998) (noting conspiracy under § 1985(3) "can be inferred from conduct and need not be proven by evidence of an express agreement").

Here, Plaintiffs fail to allege that Defendants (either as a group or in pairs) conspired or what the nature of the conspiracy was. As the initial Background discussion illustrates, Plaintiffs set forth numerous allegations concerning Defendants' purportedly discriminatory practices and conduct - both in general and in response to Plaintiffs' altercations with the Davises in October 2007. While Plaintiffs indicate at certain points that some of the Defendants acted similarly or had similar policies and practices, *at no point do Plaintiffs allege that Defendants conspired with respect to their discriminatory conduct*. While Plaintiffs need not plead that an express agreement occurred amongst the Defendants, Plaintiffs at least must allege facts from which a conspiracy may be inferred. Plaintiffs' allegations that Defendants had similar practices or acted in the same fashion in response to the altercation between Plaintiffs and the Davises are insufficient for this Court to infer that Defendants conspired in their purported discriminatory conduct. Further, Plaintiffs must allege that Defendants took actions in furtherance of their conspiracy. Because Plaintiffs have failed to identify and allege a conspiracy by the Defendants in the first instance, it is impossible to discern which actions were in furtherance of such conspiracy. Having failed to allege these necessary elements with the requisite specificity, Plaintiffs' § 1985(3) claim as currently pled fails.

The Court will therefore grant Defendants' request to dismiss this claim, but will grant Plaintiffs leave to amend to attempt to correct the deficiencies.

### D. Plaintiffs' State Law Claims

As indicated above, the Court's jurisdiction over this lawsuit is based on federal question jurisdiction. Because the Court is dismissing Plaintiffs' three federal claims on which this Court's subject jurisdiction relies, the Court declines to address Defendants' challenges to Plaintiffs' state law claims at this juncture. The Court will therefore deny Defendants' motions with respect to those

10

claims without prejudice to Defendants re-asserting their arguments, should Plaintiffs re-assert their claims in their amended pleading.  In doing so, the Court cautions Plaintiffs that any state claims that they intend to re-assert against Defendants must be supported by factual allegations.  The Court notes that since Plaintiffs initially filed this lawsuit, they have dismissed the Davises and the municipal defendants.  To the extent that Plaintiffs' state law claims were based on the now-dismissed defendants' conduct and actions, Plaintiffs need to consider whether they have sufficient factual allegations to support the elements of each of the state-law claims before they re-assert those claims against the three remaining Defendants.  Plaintiffs are also advised that, because they are proceeding with the action *pro se* (i.e., they are representing themselves), they must comply with Federal Rule of Civil Procedure 11, which mandates that any legal claims asserted "are warranted by existing law," and all factual contentions "have evidentiary support, or if specifically identified, will likely have evidentiary support after a reasonable opportunity for further investigation."  Fed. R. Civ. P. 11(b)(2), (b)(3).

## V.  CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motions to Dismiss (Dkt. ##14, 19, 50) as follows:

The Court **GRANTS** Defendants' Motions to Dismiss Plaintiffs' claims under 42 U.S.C. §1981, 42 U.S.C. § 1982, and § 42 U.S.C. § 1985(3).

The Court **GRANTS** Plaintiffs leave to amend their First Amended Complaint to: (1) allege a contractual relationship in support of their § 1981 claim; (2) allege a property interest in support of their § 1982 claim; (3) allege a conspiracy and acts in furtherance of such conspiracy in support of their § 1985(3) claim; and (4) re-assert any state law claims against the remaining Defendants if appropriate.

Plaintiffs' Second Amended Complaint shall comply with the instructions set forth above and be filed and served no later than **August 4, 2009**.

The Court further **DENIES WITHOUT PREJUDICE** Defendants' Motions to Dismiss Plaintiffs' state law claims and Defendants' motions to strike.

11

Finally, because Plaintiffs' claim for violation of 42 U.S.C. § 1983 (Count Thirteen) is asserted against the City of Alameda and Walter Tibbert - both of whom Plaintiffs have dismissed from this action - the Court **DISMISSES** Plaintiffs' § 1983 claim.

**IT IS SO ORDERED.**

Dated: July 7, 2009

_____
Maria-Elena James
Chief United States Magistrate Judge