UNITED STATES DISTRICT COURT

Northern District of California

LADONNA WILLIAMS, *et al.*,

              Plaintiffs,

   v.

UNITED STATES TENNIS ASSOCIATION, *et al*.,

              Defendants.
_____/

No. C 08-04698 MEJ

**ORDER RE DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT [Dkt. ##64, 66, 70]**

## I. INTRODUCTION

Pending before the Court are: (1) Defendant Harbor Bay Isle Associate, Inc.'s ("Harbor Bay") Motion to Dismiss Plaintiff's Amended Unverified Complaint (Dkt. #64); (2) Defendant United States Tennis Association Northern California's ("Nor Cal") Motion to Dismiss the Second Amended Complaint and to Strike Certain Allegations (Dkt. #66); and (3) Defendant United States Tennis Association Inc.'s ("USTA") Motion to Dismiss the Complaint or, Alternatively, to Strike Certain Allegations (Dkt. #70). Plaintiffs LaDonna Williams and P.W. have not filed an Opposition to any of the pending Motions. On October 1, 2009, the Court held a hearing on the Motions, at which time it heard extensive oral argument from Plaintiffs and Defendants. Having carefully considered the parties' briefs, oral argument, and controlling authorities, the Court now **RULES** as follows.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs initiated this lawsuit on October 10, 2008, by filing a Complaint against seven named defendants. (Dkt. #1.) On October 24, 2008, Plaintiffs filed their "Corrected Complaint," herein referred to as the First Amended Complaint. (Dkt. #3.) Plaintiffs thereafter dismissed four of the named defendants, proceeding with this lawsuit against Defendants Harbor Bay, USTA, and Nor Cal. The three remaining Defendants then moved to dismiss Plaintiffs' First Amended Complaint

for failure to state claim. (Dkts. ##14, 19, 50.)

On July 7, 2009, the Court issued an Order granting Defendants' Motions in part and denying them in part. (Dkt. #62.) Specifically, the Court found that each of Plaintiffs' three federal claims were deficient as pled. First, with respect to Plaintiffs' claim for violation of 42 U.S.C. § 1981, the Court found that Plaintiffs had failed to plead the existence of a contractual relationship, which is required to maintain a claim under § 1981. The Court therefore dismissed that claim, but granted Plaintiffs leave to amend to attempt to correct the deficiency. Second, as to Plaintiffs' claim for violation of 42 U.S.C. § 1982, the Court found that Plaintiffs had failed to allege a property interest that Defendants impaired through their conduct. The Court therefore granted Defendants' motion to dismiss Plaintiffs' § 1982 claim and concurrently granted Plaintiffs leave to amend their claim in the event they could allege a property interest that could legally support a claim under § 1982. Third, with respect to Plaintiffs' claim for violation of 42 U.S.C. § 1985(3), the Court found that Plaintiffs had failed to allege that Defendants conspired, either as a group or in pairs, or what the nature of the conspiracy was. As a result, the Court dismissed Plaintiffs' § 1985(3) claim and granted Plaintiffs leave to amend. Because the Court found that Plaintiffs had not asserted a legally viable federal claim, the Court declined to address Defendants' challenges to Plaintiffs' state law claims. The Court therefore denied Defendants' motions to dismiss as to those claims without prejudice to Defendants reasserting their challenges.

On August 5, 2009, Plaintiffs filed their Second Amended Complaint (Dkt. #63). The relevant allegations from that pleading, taken as true and construed in the light most favorable to Plaintiffs, are as follows.

Plaintiff LaDonna Williams is Plaintiff P.W.'s mother. P.W. is a teenager and is described as a "talented high performance tennis player." (Sec. Amend. Compl. ¶4.) Plaintiffs are African-American. (*Id*. ¶¶14, 84.) USTA is the national governing body for competitive tennis in the United States, and is the largest tennis organization in the world. (*Id.* ¶6.) NorCal is the California affiliated body of USTA and is jointly responsible for the organization of competitive tennis in the northern region of California. (*Id.* ¶7.) Harbor Bay Isle Associates, Inc. is the owner of the Harbor

2

1  Bay Tennis Club.  (*Id.* ¶8.)

2  Since June 2006, P.W. has had a paid membership in UTSA.  (Sec. Am. Compl. ¶13.)  P.W.
3  regularly participates in tennis tournaments, including "high performance level" tournaments that
4  USTA and Nor Cal organize in Northern California.  (*Id.* ¶17)  According to Plaintiffs, beginning in
5  June 2006, P.W. rapidly began rising in the competitive rankings for her age group.  (*Id.* ¶19.)  By
6  July 2007, P.W. was the highest-ranked African-American female in her age group in Nor Cal's
7  region.  (*Id.*)

8  Plaintiffs allege that in order for P.W. to continue to develop her tennis skills, she needed
9  assistance and resources.  (*Id.* ¶20.)  According to Plaintiffs, although USTA and Nor Cal market
10 themselves as providing developmental tennis opportunities for tennis players, they, in fact, do not
11 provide support and assistance for African-American players.  (*Id.* ¶21.)

12 Plaintiffs also charge that UTSA and Nor Cal's draw systems are set up to discriminate
13 against African-American competitors.  (*Id.* ¶22.)  Particularly, Plaintiffs allege that the system pits
14 African-American players against each other in first round matches, pits African-American players
15 against the highest seeded player in a draw, and places all African-American competitors on the
16 same side of the draw.  (*Id.* ¶22.)

17 Additionally, Plaintiffs contend that UTSA and Nor Cal's grant process is unfair and
18 discriminatory against African-American tennis players.  (*Id.* ¶52.)  According to Plaintiffs, USTA
19 and Nor Cal routinely award non-Black players with lesser skill levels significantly higher grants
20 and support than African-American players.  (*Id.* ¶52.)  As evidence of this practice, Plaintiffs allege
21 that Ms. Williams applied for a grant on P.W.'s behalf from Nor Cal's Multi Cultural Programs
22 Grants, but Nor Cal denied the application on the ground that P.W. had an insufficient player record.
23 (*Id.* ¶¶27, 28.)  Ms. Williams, however, challenged the denial and Nor Cal later approved a grant of
24 $250 for P.W. in September 2006.  (*Id.* ¶34.)

25 In the same vein, Plaintiffs allege that USTA and Nor Cal discriminate against African-
26 American players in the manner it awards scholarships.  (*Id.* ¶53.)  They aver that between 2004 and
27 2008, USTA and Nor Cal did not award any of its three scholarships to an African-American player.
28

3

(*Id.* ¶53.) While Plaintiffs indicate that Nor Cal created a new scholarship, the "Althea Gibson Scholarship," in response to concerns raised by African-American players, Plaintiffs assert that it does not erase that no African American has been awarded college scholarships for over four years. (*Id*. ¶53.)

Plaintiffs allege that after they challenged and reported UTSA and Nor Cal's discriminatory practices, UTSA and Nor Cal retaliated against them. (*Id*. ¶¶36, 37, 38). In particular, Nor Cal circulated negative email messages and letters about P.W. and read and distributed the letters at its October 17, 2007 board meeting. (*Id*. ¶¶38-40, 57, 59.) Additionally, Plaintiffs aver that Nor Cal's president instructed Nor Cal staff to send out ghost letters attacking P.W.'s performance and conduct during a competition in Florida. (*Id*. ¶60.)

On October 20, 2007, P.W. was participating in the Excellence Tournament organized by USTA and Nor Cal, and held at Harbor Bay Tennis Club. (*Id*. ¶14.) During the tournament, P.W. and former defendant K.D. competed against each other in a match. (*Id*. ¶62.) Plaintiffs allege that K.D. assaulted P.W. with an ice bag. (*Id*. ¶63(c).) The altercation escalated, with K.D.'s mother approaching and confronting Plaintiffs. (*Id*. ¶62.) The police were called and P.W. was arrested. (*Id*.) Plaintiffs assert that officials from each of the three Defendants were at the match, but failed to take appropriate actions to protect Plaintiffs and "fail[ed] to arrange for Plaintiffs to be heard at the scene of the incident." (*Id.* ¶63(b).) Further, according to Plaintiffs, it was NTSA and Nor Cal's practices that led to P.W. being assaulted on October 20, 2007. (*Id*. ¶41.) They allege that, rather than assisting P.W., Defendants defaulted her from the match, causing P.W. to lose points, fall in the rankings, and to be suspended from future tournaments.[1] (*Id*.)

Plaintiffs charge "[t]hese very harmful and vicious actions were all perpetrated against [P.W.] to silence and discredit her mother's advocacy and outspokenness against USTA and [] Nor Cal's exclusionary, discriminatory and racist actions openly practiced against high[-]performing

---

[1] The other player involved in the altercation (K.D.) - who Plaintiffs claim was the instigator - was not penalized or disciplined by USTA and Nor Cal, and received additional grants, which Plaintiffs claim were "rewards for their part in these conspiracies." (*Id*. ¶42.)

4

low-income African-American juniors and their families who try to speak out against these injustices." (*Id.*) More generally, Plaintiffs allege that USTA and Nor Cal created a hostile and unsafe environment at tournaments by failing to provide protective measures for African-American players. (*Id.* ¶49.) Plaintiffs claim that, "[a]lthough most African-Americans, including [P.W.] are paid members (a mandatory requirement), they are not provided the same level of safety[] and protection allotted to other non-Black members, resulting in false arrest of young Black junior players [such] as what happened to [P.W.]" (*Id.* ¶49.)

Plaintiffs assert that while P.W. had previously aspired to be a professional tennis player, as a result of the incidents and experiences detailed above, she has now become withdrawn and has stopped attending and participating in competitions for fear of further retaliation and intimidation by UTSA and Nor Cal. (*Id.* ¶17.)

Based on the foregoing allegations, Plaintiffs assert claims against Defendants for: (1) violation of civil rights pursuant to 42 U.S.C. § 1981; (2) violation of civil rights pursuant to 42 U.S.C. § 1985(3); (3) omitted; (4) intentional infliction of emotional distress; (5) negligence; (6) assault; (7) battery; (8) violation of Article I, §§ 1, 7, and 13 of the California Constitution; (9) violation of California Civil Code § 52.1(B); (10) "intentional infliction of emotional distress - punitive damages"; and (11) defamation.[2]

### III. LEGAL STANDARD

Defendants each move to dismiss Plaintiffs' Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Pursuant to Rule 12(b)(6), a defendant may seek dismissal of a complaint for failure to state a claim upon which relief can be granted. Rule 8, which provides the standard for judging whether such a cognizable claim exists, requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, to survive a motion to dismiss, a complaint need not provide detailed factual

---

[2]Although Plaintiffs' Second Amended Complaint indicates that there are eleven claims, Plaintiffs have omitted a claim under the "third cause of action." However, the Court has retained the headings to each claim so that its discussion corresponds with the headings in Plaintiffs' Second Amended Complaint.

allegations. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citation omitted).

A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," not just conceivable. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

In reviewing a motion to dismiss, the court may also consider documents attached to the complaint. *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted). In addition, the court may consider a matter that is properly the subject of judicial notice, such as matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

### IV.   ANALYSIS

Because subject matter jurisdiction exists in this case under 28 U.S.C. §1331 based on Plaintiffs' claims arising under federal law, namely Plaintiffs' claims under 42 U.S.C. § 1981 and 42

U.S.C. § 1985(3), the Court will begin its analysis with these claims.

**A.     Count One - Violation of 42 U.S.C. § 1981**

Plaintiffs' first claim is for violation of 42 U.S.C. § 1981. This statute provides in relevant part:

> (a) Statement of equal rights
> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> (b) "Make and enforce contracts" defined
> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981 (a), (b). Because § 1981's "specific function" is to protect the equal right to "make and enforce contracts" without respect to race, "[a]ny claim brought under § 1981, therefore, must initially identify an impaired 'contractual relationship,' [] under which the plaintiff has rights." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 475, 476 (2006).

In its Motion, Harbor Bay contends that Plaintiffs' § 1981 claim against it fails because Plaintiffs have not and cannot allege that Harbor Bay discriminated against Plaintiffs on the basis of their race, thereby interfering with their right to make and enforce a private contract. Reviewing the entirety of Plaintiffs' Second Amended Complaint, Plaintiffs have not alleged any contract existed between them and Harbor Bay. Thus, the Court agrees with Harbor Bay that Plaintiffs have failed to allege sufficient facts to state a viable § 1981 claim against it. The Court will therefore **GRANT** Harbor Bay's Motion to dismiss this claim.

In the same vein, Defendants USTA and Nor Cal contend that Plaintiffs' § 1981 claim against them should be dismissed. In their Motions, Defendants USTA and Nor Cal argue that Plaintiffs have not alleged any contract existed between them and Plaintiff LaDonna Williams. (Dkt. #66 at 9; Dkt. #70 at 3-4.) Thus, Defendants argue that because there is no private contract

between Plaintiff LaDonna Williams and either Defendant, any claim for violation of LaDonna Williams's rights under § 1981 fails as a matter of law. The Court agrees.

Defendants further contend that Plaintiffs have not allege sufficient facts with respect to any contract between Plaintiff P.W. and Defendants to maintain their § 1981 claim. Reviewing the Second Amended Complaint, the only allegation that could be construed as contractual in nature is Plaintiffs' allegation that P.W. had a paid membership with USTA. (Sec. Amend. Compl. ¶13.) However, as Defendants convincingly argue in their Motions, Plaintiffs have failed to allege how Defendants interfered with P.W.'s right under that contract. As Defendant USTA points out, the allegation that P.W. had a paid membership with USTA forecloses Plaintiffs from arguing that she was precluded from entering into a membership contract with USTA because of their race. Further, while Plaintiffs have alleged that USTA and Nor Cal engaged in various discriminatory practices with respect to their grant and scholarship programs, Plaintiffs have not alleged that P.W. was guaranteed either a scholarship or grant under the membership agreement such that the denial of either would amount to a violation of Plaintiff P.W.'s right to enforce that contract in violation of § 1981. Likewise, to the extent that Plaintiffs allege USTA and Nor Cal officials discriminated against Plaintiff P.W. in connection with her participation in tournaments, Plaintiffs fail to set forth any facts as to how Defendants' actions affected P.W.'s rights under the membership agreement. Particularly, Plaintiffs have not set forth any facts connecting the membership agreement to Defendants' alleged actions in response to the altercation between Plaintiff P.W. and her competitor during the Excellence Tournament.

In sum, the Court has carefully reviewed Plaintiffs' Second Amended Complaint and agrees with Defendants USTA and Nor Cal that Plaintiffs have failed to set forth sufficient allegations to state a plausible claim against Defendants for violation of § 1981. Consequently, the Court will **GRANT** Defendants' Motion to Dismiss this claim.

**B.     Count Two - Violation of 42 U.S.C. § 1985(3)**

In their second claim, Plaintiffs charge that Defendants violated 42 U.S.C. § 1985(3), which concerns conspiracies to deprive or interfere with civil rights. To state a claim under § 1985(3), a

8

plaintiff must allege: "(1) a conspiracy; (2) to deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States." *Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971)). With respect to the conspiracy element, the Ninth Circuit has held that a plaintiff asserting a claim under § 1985 "must allege facts to support the allegation that [the] defendants conspired together"; a "mere allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988) (affirming dismissal of § 1985(3) claim where complaint "contain[ed] legal conclusions but no specification of any facts to support the claim of conspiracy"). However, there is no requirement that a plaintiff allege specific facts with respect to how the alleged conspiracy was formed; it is sufficient to allege facts from which the existence of a conspiracy may be inferred. *See Griffin*, 403 U.S. at 90-91; *Scott v. Ross*, 140 F.3d 1275, 1284 (9th Cir. 1998) (noting conspiracy under § 1985(3) "can be inferred from conduct and need not be proven by evidence of an express agreement").

In their Motions, Defendants argue that Plaintiffs have failed to set forth allegations sufficient to state an actionable claim under § 1985(3). Specifically, they point out that while Plaintiffs have allege that Plaintiff P.W. has the right to play tennis "free of conspiracies," and without the fear of conspiracies, *see* Second Amended Complaint ¶¶ 16, 17, Plaintiffs have not alleged facts to support their charge that Defendants conspired to discriminate against Plaintiffs. The Court agrees with Defendants.

As with their prior Amended Complaint, Plaintiffs' Second Amended Complaint is devoid of allegations regarding which Defendants conspired or the nature of any conspiracy or conspiracies. Rather, as indicated above, Plaintiffs have merely set forth conclusory statements that Plaintiff P.W. should be able to compete in tennis competitions without threat of conspiracies. Nor do any of Plaintiffs' other allegations support the inference of a conspiracy. While Plaintiffs have alleged various discriminatory actions by Defendants, Plaintiffs have not alleged that Defendants conspired

9

with respect to these acts or set forth facts from which the Court can infer that a conspiracy amongst any of the Defendants existed. Further, to state an actionable claim under § 1985(3), Plaintiffs must allege that Defendants took actions in furtherance of their conspiracy. Because Plaintiffs have not set forth sufficient elements relating to the conspiracy element, it is impossible to determine which, if any, of Plaintiffs' allegations identify an act in furtherance of the conspiracy.

In sum, because Plaintiffs have failed to allege sufficient facts to support each of the requisite elements of their § 1985(3) claim, their claim is subject to dismissal. The Court will therefore **GRANT** Defendants' Motions to Dismiss Plaintiffs' § 1985(3) claim.

### C.   Plaintiffs' State Law Claims

As set forth above, the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 based on Plaintiffs' federal claims. The Court has determined that both of Plaintiffs' federal claims are subject to dismissal, thereby extinguishing the basis for original jurisdiction in this matter. Because Plaintiffs' remaining claims all arise under state law, the Court finds that state court is the better forum for resolution of such claims. Accordingly, pursuant to 28 U.S.C. 1367(c)(3), the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims.

## V.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motions to Dismiss Plaintiffs' claims for violation of 28 U.S.C. § 1981 and 28 U.S.C. § 1985(3). Because Plaintiffs have not been able to cure the deficiencies in these claims, and it does not appear to the Court that further leave to amend would enable Plaintiffs' to plead plausible claims, the Court **DISMISSES** Plaintiffs' § 1981 and § 1985(3) claims **WITH PREJUDICE**. The Court **DENIES AS MOOT** Defendants' Motions in all other respects. The Clerk of Court shall close the file.

**IT IS SO ORDERED.**

Dated: December 17, 2009

_____
Maria-Elena James
Chief United States Magistrate Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

LADONNA WILLIAMS et al,

        Plaintiff,

v.

UNITED STATES TENNIS ASSOCIATION et al,

        Defendant.

Case Number: CV08-04698 MEJ

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on December 17, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

LaDonna Williams
272 Reynard Lane
Vallejo, CA 94591

Dated: December 17, 2009

        Richard W. Wieking, Clerk
        By: Brenda Tolbert, Deputy Clerk